UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------x
VERNE DAVIDSON,
      Plaintiff,

      v.                               Docket No. 05-30094-MAP


SPRINGFIELD FOOD SERVICE
CORP. , PERFORMANCE FOOD
GROUP and PERFORMANCE FOOD
GROUP,
        Defendants.
----------------------------------------------x

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL RESPONSES TO DISCOVERY**

      Pursuant to Fed. R. Civ. P. Rule 37 (a), the plaintiff, Verne Davidson requests

that the Court order the defendants to produce adequate responses to

Interrogatories and Requests for the Production of Documents.  The grounds

therefore are set forth below.

**I.      FACTS AND PROCEDURAL HISTORY**

      Plaintiff Verne Davidson brings an action for equitable relief and

compensatory and punitive damages against defendants Springfield Food Service

Corp. and Performance Food Group under the federal Family and Medical Leave

Act, requiring that employers provide their employees with leave and Massachusetts

laws against discrimination on the basis of his membership in protected

classifications and for retaliation for exercising his rights under the Massachusetts

Workers' Compensation Act.

      The plaintiff asserts that defendants wrongfully refused to engage in good

faith in an interactive process with Plaintiff regarding his request for reasonable

accommodations in the terms and conditions of his employment, failed to provide

him with reasonable accommodations in the terms and conditions of his employment

due to his disability, and wrongfully discharged him from his employment with the

defendants based on his membership in a protected class in violation of M.G.L. c.

151B.  In addition, the defendants denied the plaintiff of rights and benefits to which

he was entitled under the Family and Medical Leave Act.

Mr. Davidson, is a 44 year old African American man who plaintiff began his

employment as a stock handler with Springfield Food Service Corporation ("SFC")

on or around August 16, 1988.  Performance Food Group ("PFG") a publicly held

corporation purchased SFC in or around January 2002.  On or around that time the

plaintiff was assigned to work with a new supervisor, Rolando Pagan.

The plaintiff was a good employee and received accolades, awards and pay

increases throughout his long-term employment.  On April 24, 2003, the plaintiff

strained his lower back on the job but did not immediately report the injury to his

supervisor.  The pain increased and on the following day the plaintiff left a message

for his supervisor that he had hurt his back in a work-related injury and would be out

of work.   By April 28, 2003, the plaintiff was no longer able to work due to his back

condition and called Donna Szaban in defendants' human resources department.

At that time he went to see a doctor at Occupational Health and Rehabilitation, Inc.,

was given a course of treatment, and was unable to return to work.        The

course of treatment included taking prescribed strong pain killers for the pain related

to his work-related injury.  Ms. Szaban also filled out a notice of injury accident

report and the plaintiff filed a worker's compensation claim relating to the back injury

that occurred on April 24, 2003.

2

Although he was initially returned to work with restrictions by the doctor effective May 1, 2003, due to his injury he was unable to return to work. While he was out of work, the plaintiff called his supervisor and human resources and left messages regarding his absence due to his injury on the job. No one from work ever returned his call.

On Thursday May 1 and Friday May 2, 2003, the plaintiff continued to be in excruciating pain from his work related injury and was unable to return to work and was on strong painkillers. Defendant did not attempt to call or contact him at that time. When Mr. Davison returned to work the following Monday, which was within two business days of his original return to work date, and after working for about an hour, the plaintiff was informed by Ms. Szaban that he had been terminated effective May 2, 2003. The plaintiff was told that his termination was due to his "failure to report to work for two consecutive days." The plaintiff alleges that this reason is pretextual and contrary to an explicit company policy. The plaintiff was then replaced by a younger, non-African American, non-disabled employee who was not on workers' compensation. The plaintiff was never apprised of his rights granted under the Family and Medical Leave Act and was terminated in violation of the rights granted to him under that Act.

The plaintiff timely served written discovery and responses to that written discovery were received by the plaintiff. The parties conferred about the discovery disputes arising from plaintiff's written discovery in an attempt to narrow the issues before the Court pursuant to Local Rules 7.1 and 37.1. Defendants counsel agreed to provide certain of the documents and information to which defendants previously objected and maintained his objection to other requests.

3

## II.    ARGUMENT

**THE DEFENDANTS HAVE FAILED TO ADEQUATELY RESPOND TO THE PLAINTIFF'S FIRST SET OF INTERROGATORIES OR REQUESTS FOR PRODUCTION OF DOCUMENTS.**

### A.    *INTERROGATORIES 10 and 11*

9.    At any time did the Defendants or any agent or employee of the Defendants have any knowledge or awareness that under certain circumstances an employer would have an obligation to reasonably accommodate the disabilities of an employee?

This Interrogatory was answered by the defendants as follows, " … defendants have been aware, at all relevant times, of what their legal duties are with respect to making reasonable accommodations to employees with disabilities and/or handicaps."  The following interrogatories are:

10.    If the answer to the preceding Interrogatory is "yes," please provide the following information:

a.    Set forth the dates upon which the Defendants or any agent or employee of the Defendants  gained such knowledge or awareness.

b.    Set forth the names, addresses and phone numbers of each person who gained such knowledge or awareness and the relationship of each such person to the Defendants, and describe in detail the manner in which each such person gained such knowledge or awareness.

c.    Describe the substance of any information received by each such person which contributed to such knowledge or awareness and the source of such information.

4

       d.     Identify any and all documents which might be relevant to your response to this interrogatory.

**OBJECTION:** Defendants object to this interrogatory on the grounds that it is so vague, unintelligible, and ambiguous that the defendants cannot fairly respond. Defendants further object to this interrogatory on the grounds that it seeks information which is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

      11.    Set forth the Defendants' understanding as of April 24, 2003, of the nature and scope of an employer's obligations to reasonably accommodate the disabilities of an employee.

**OBJECTION:** Defendants object to this interrogatory on the grounds that it is so vague, unintelligible, and ambiguous that the defendants cannot fairly respond. Defendants further object to this interrogatory on the grounds that it seeks information which is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

### Argument

These Interrogatories go to the issue of punitive damages and specifically, what the defendants knew of their obligations under the civil rights laws. The purpose of punitive damages is to punish defendants for conduct that it either knew violated federal or state anti-discrimination law or because it acted with reckless or callous indifference to the risk of violating the law. Defendants' knowledge of the civil rights laws and their actions in the face of that knowledge goes to the degree of recklessness or callous indifference of the defendant's conduct, a determinative factor in determining whether punitive damages is appropriate in a case such as this. See Romano v. U-Haul Int'l, 233 F.3d 655, 669 (1st Cir. 2000); Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 253-54 (1st Cir. 2000)

### *B.    INTERROGATORY 29 AND DOCUMENT REQUEST 6*

29.    Please identify all employees who did not report to work as scheduled at some time at the defendant's Springfield location.  In so doing, for each such employee please state:

a) the name of the employee;

b) the age of the employee;

c) the race of the employee

d) whether that employee was suffering from a work related injury;

e) the years of service of the employee;

f) the employee's supervisor;

g) the specific circumstances and facts why the employee failed to report to work;

h) the circumstances and facts why the defendants made the decision to terminate, discipline or not discipline or terminate the employee;

i) the identity employee or agent of the defendants who made the decisions set forth in 29 h above; and

j) whether that employee requested any Family and Medical Leave.

**OBJECTION:** Defendants object to this interrogatory on the grounds that it is so vague, unintelligible, and ambiguous that the defendants cannot fairly respond. Defendants further object to this interrogatory on the grounds that it seeks information which is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

6.    All documents referring in any way to the failure by any employee of the defendants' in their Springfield location to report to work on at least one occasion.

**OBJECTION:** Defendants object to this request on the ground that it seeks information which is overly broad, unduly burdensome and is beyond the scope of permissible discovery.

6

***Argument***

Information typically maintained in personnel files of other employees are generally discoverable in employment discrimination cases.  Griffith v. Wal-Mart Stores, Inc., 163 F.R.D. 4,5 (E.D. Ky. 1995); Willis v. Golden Rule Ins. Co., 1991 WL 550038 at *3-4, 56 FEP Cas. (BNA) 1451, 1454 (E.D. Tenn. 1991).  The plaintiff is entitled to know about various comparators.  He should be allowed to discover whether there were any individuals who were not in a protected age, race or disability class, for example, that were two day no-call no shows, as the defendant alleges was the case with the plaintiff and who were not terminated as a result.  This is precisely the kind of evidence that is probative in this matter.

### C.     REQUESTS FOR PRODUCTION NOS. 9 and 12.

9.     All documents reflecting complaints by persons about discrimination, violation of the Family and Medical Leave Act or workers' compensation retaliation at the Springfield location of the defendants.

**OBJECTION:** Defendants object to this request on the ground that it seeks information which is overly broad, unduly burdensome and is beyond the scope of permissible discovery. Defendants further object on the grounds that it seeks disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney of the defendant.  To the extent that this request seeks documents relating to Defendants' investigation into allegations of FMLA discrimination or workers compensation retaliation and/or communications between defendants and their attorney, defendants object on the grounds that said documents are protected from discovery by Fed.R.Civ.P. 26(b)(3), the work-product doctrine, and/or attorney-client privilege.  Moreover, defendants object to this request on the grounds that it seeks personal and confidential information concerning employee(s) of defendants. Finally, defendants object to this request on the ground that it is unlikely to lead to the discovery of admissible evidence.

12.    All Attorney General, Workers' Compensation Commission, or court complaints alleging discrimination, violation of the Family and Medical Leave Act, or workers' compensation retaliation filed against the defendants concerning the defendants' Springfield location.

**OBJECTION:** Defendants object to this request on the ground that it seeks information which is overly broad, unduly burdensome and is beyond the scope of permissible discovery. Moreover, defendants object to this request on the grounds that it seeks personal and confidential information concerning employee(s) of defendants. Finally, defendants object to this request on the ground that it is unlikely to lead to the discovery of admissible evidence.

### *Argument*

The above document requests are reasonably calculated to lead to the discovery of admissible evidence. The plaintiff seeks to discover information related to other claims by other employees of incidents of discrimination, violation of the Family and Medical Leave Act or workers' compensation retaliation. These incidents may have been by the same alleged discriminators or law breakers as are involved in the allegations that form the basis of plaintiff's Complaint. This information is thus highly probative of the environment and defendants' handling of analogous claims. More generally, this request may provide witness information. Such evidence, if discovered, is relevant because the plaintiff may establish his claim through the use of circumstantial evidence, including evidence of the defendants' discriminatory or otherwise illegal actions and inaction toward other employees. See e.g. Cummings v. Standard Register Co., 265 F.3d 50, 63 (1st Cir. 2001).

As to the defendants' objection based on "personal and confidential information," nothing precludes a defendant in litigation from providing personal

information about other employees through discovery. Compare Dalessio v. Mass. Mutual Life Ins. Co., No. 00-0070 (Hampden County Mass. Super. Ct.  August 16, 2000) at 8-9 (copy attached) and Johnson v. Harvard Univ., 111 F.R.D. 472, 476 (D. Mass. 1986) with Whittingham v. Amherst College, 164 F.R.D. 124 (D. Mass. 1995). This is particularly true in such a case where there is a particularized need for information regarding complaints by other employees of a discriminatory or illegal environment.  Here, the defendants have provided documents showing that similar complaints by other employees exist.  Evidence relating to those other employees and their complaints and other employee complaints not yet provided is probative. Moreover, were the Court to find the information sought was "personal" or "confidential" the plaintiff would be willing to enter into a stipulated protective order for such information.

## D.    REQUEST FOR PRODUCTION NO. 10

10.    All documents reflecting the net worth, assets and liabilities of the defendants during the years 2002 to the present.

**OBJECTION:**  Defendants object to this request on the ground that it seeks information which is overly broad, unduly burdensome and is beyond the scope of permissible discovery.  Defendants further object to this request as it seeks confidential, proprietary company information.  Moreover, defendants object to this request on the ground that it is unlikely to lead to the discovery of admissible evidence.  Finally as PFG is a publicly traded company which maintains a website which provides public access to certain financial information, the burden of ascertaining the requested documents is substantially the same for Plaintiff as defendants.

**Argument**

SFC is not and was never a public corporation and the defendant has a need for financial information relating to that corporation.  Because the plaintiff seeks and may be awarded punitive damages under both state and federal law, the defendants'

financial position is discoverable.  See TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 464 (1993); Labonte v. Hutchins & Wheeler, 424 Mass. 813, 827 (1997).  Federal courts have routinely determined that a detailed inquiry into the size of the defendants' business and the defendants' financial worth is relevant to the amount of punitive damages awarded.  Eichenseer v. Reserve Life Ins. Co., 934 F. 2d 1377, 1383 (5th Cir.), cert. den., 499 U.S. 914 (1991); Rodgers v. Fisher Body Division, General Motors Corp., 739 F. 2d 1102, 1109 (6th Cir.1984) (holding that jury in employment discrimination case was properly instructed "that the financial resources of defendant could be considered in fixing the amount of (punitive) damages"); Littlefield v. McGuffey, 954 F.2d 1337, 1349 (7th Cir. 1992);   Hollins v. Powell, 773 F. 2d 191, 198 (8th Cir. 1985), cert. den., 475 U.S. 1119 (1986) ("in assessing punitive damages, it is appropriate to consider a defendant's net worth"); Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 213 (9th Cir. 1988) (jury was properly instructed that it could consider defendants' net worth to determine punitive damages).  The First Circuit has stated that punitive damages must be enough to "smart"  Rowlett v. Anheuser Busch, Inc., 832 F.2d 194, 207 (1st Cir. 1987). Therefore, a plaintiff is entitled to know the defendants' net worth to provide evidence as to what will "smart" to a particular employer.

Information about assets owned by the defendants is particularly relevant because it reveals the defendants' potential income from those operations.  See Phillips v. Hunter Trails Community Ass'n, 685 F. 2d 184, 191 (7th Cir. 1982);  Davis v. The Mansards, 597 F. Supp. 334, 347 (N.D. Ind. 1984).   See also, Caruso v. Coleman, 157 F.R.D. 344, 348-49 (E.D. Pa. 1994)(reviewing the federal cases on

the issue and determining that the plaintiff was entitled to financial records in accordance with the majority rule).

III.     **CONCLUSION**

For all the reason set forth above the plaintiff requests that this court order complete responses to the plaintiff's Interrogatories Nos. 10,11, 29 and Document Requests Nos. 6,9,10,12.

PLAINTIFF VERNE DAVIDSON
By his attorney,


    /s/ Suzanne Garrow
Suzanne Garrow BBO# 636548
sgarrow@comcast.net
Heisler, Feldman, McCormick
        & Garrow, P.C.
1145 Main Street, Suite 508
Springfield, MA  01103
Ph. (413) 788-7988
Fax (413) 788-7996


CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

        /s/ Suzanne Garrow
Suzanne Garrow

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

SUPERIOR COURT
COURT CIVIL ACTION NO. 00-0070

*05 CV 30094-MAP*

NANCY DALESSIO

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE CO.

HAMPDEN COUNTY
SUPERIOR COURT
FILED
AUG 16 2000
CLERK-MAGISTRATE

ORDER ON PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

This matter comes before the court on Plaintiff Nancy Dalessio's Motion to
Compel the production of documents withheld by the Defendant Massachusetts Mutual
Life Insurance Co. ("MassMutual"). As an initial matter defendant's attorney Katherine
Robertson's ("Robertson") affidavit states that MassMutual has answered, or will answer
subsequent to the protective order, the following requests: 7, 13-15, 19, 23, 24, 27, 29,
30, 32 and 37. The remaining requests plaintiff seeks to compel are 2, 9, 12, 16, 20,
21, 22, 26, 28, 34, and 36. See Robertson's Affidavit in Support of Defendant's
Opposition to Plaintiff's Motion to Compel Production of Documents at 4.

This court declines to refer this discovery dispute or any future disputes to a
discovery master. Given the nature of this case, the amount of documents that must be
produced and the time constraints, the referral to a master would delay the established
tracking order.

1

After a hearing and a review of the documents in question this court Orders as follows:

## I. - DOCUMENTS

**Request 2 -** Personnel Records of Current and Former MassMutual Employees, namely, Peter Daboul, Steven Hawkins, Bruce Winne, Stephen Dennehy, Kinam Kim, Paul Adornato, John Libera, Susan Alfano, and Patricia Wallington:

MassMutual has offered to produce the personnel records of Peter Daboul, Bruce Winne, Stephen Dennehy and Kinam Kim (subject to a protective order). MassMutual's objection to producing records of the remaining employees rests on the argument that these are requests for private information and there has been no showing by Plaintiff of what MassMutual calls a "particularized showing of relevance." MassMutual cites Whittingham v. Amherst, 164 F.R.D. 124, 127 (D.Mass. 1995) for such a requirement. Whittingham does not suggest a "particularized" showing of relevance when seeking personnel records. Rather, Whittingham precluded recovery of personnel information in a racial discrimination case where the plaintiff made no showing that the individuals whose personnel files plaintiff sought to discover suffered similar treatment. Id. at 127. In this case, the plaintiff seeks to discover many of these individuals' files not because they were "similarly situated" as the plaintiff, but because they were treated differently as a result of age or gender. With the exception of Susan Alfano and possibly Patricia Wallington (the parties do not independently address Ms. Wallington's personnel file in their briefs nor did they do so in oral argument), it is exactly the difference in situation, i.e., male officers allegedly receiving superior

2

severance packages, that justifies such discovery in light of the plaintiff's complaint. With regard to Susan Alfano, MassMutual argues that she is not similarly situated. However, such an argument is hair-splitting at this stage, and instead of a mere assertion that such information is relevant, this court finds the plaintiff has provided ample justification to discover these records. Contra Whittingham, 164 F.R.D. at 127 (stating that the plaintiff offered no basis for how the personnel files he sought were relevant to his claim of disparate treatment or his claim of a pattern and practice of discrimination against black employees).

Thus, MassMutual is **ORDERED** to produce the personnel records of Steven Hawkins, Paul Adornato, John Libera, Susan Alfano and Patricia Wallington.

**Requests 9 and 34** - All documents concerning Affirmative Action Summary documents for MassMutual (9); all documents concerning the Diversity Task Force (34).Although initially unwilling to provide such information, at the 9C conference MassMutual offered to produce Affirmative Action Summary documents for the Information Systems Organization ("ISO"), the corporate unit in which plaintiff was employed. For the company as a whole, MassMutual offered to produce all documents concerning recommendations made by the Diversity Task Force. MassMutual designates federal cases protecting voluntary self-critical analysis contained in affirmative action plans. See, e.g., Whittingham, 164 F.R.D. at 129-131 (recognizing

3

that discovery of voluntary self-evaluative materials might curtail accurate information regarding affirmative action).  See also <u>Jackson</u> v. <u>Harvard Univ.</u>, 111 F.R.D. 472, 474 (D.Mass. 1986) (affirming denial of subjective evaluative material in affirmative action compliance reports); <u>O'Connor</u> v. <u>Chrysler Corp.</u>, 86 F.R.D. 211 (D.Mass. 1980) (stating that self-evaluative portions of affirmative action summary documents prepared for governmentally imposed critical self-analysis are protected from disclosure).  Other federal courts refuse to recognize the privilege claimed by MassMutual.  See, e.g., <u>Spencer Sav. Bank v. Excell Mortgage Corp.</u>, 960 F. Supp. 835, 838 (D.N.J. 1997) (refusing to recognize the self-critical analysis privilege at federal common law).

Massachusetts courts have not adopted this privilege and it is unlikely that they would do so based on public policy considerations.  See <u>Commonwealth</u> v. <u>Wanis</u>, 426 Mass. 639, 642 n.3 (1998) ("We have been especially reluctant to create new privileges on the basis of speculation or conjecture as to the harms which may result from our failure to do so.") (quoting <u>Babets</u> v. <u>Secretary of Human Servs.</u>, 403 Mass. 230, 238 (1988)).  Hence it is **ORDERED** that MassMutual produce this information.

**Request 12** - <u>Senior and executive officer development plans and succession plans including those of individual executive development plans of MassMutual senior and executive officers.</u>

4

Since the plaintiff's complaint alleges that MassMutual's president has adopted a company-wide policy of discrimination, MassMutual is **ORDERED** to produce the Senior and Executive Officer Development Plans and Succession Plans, including the documents in the Information's Systems Organization. The assessments prepared by Personnel Decisions Incorporated shall not be produced at this time.

**Request 16** - All documents concerning the Early Retirement Program announced in 1999.

MassMutual is **ORDERED** to produce these documents


**Document Requests 20, 21, and 22** - All documents concerning the Summary of Answers to Employee Questions from Mr. O'Connell (20); All documents concerning statements from Mr. O'Connell on the subject of age, gender, educational background or other qualifications of the Mass Mutual workforce (21); All audio tapes and video tapes in which Mr. O'Connell's voice or picture appears (22).

**Request 20** - Since this request is limited to Mr. O'Connell's *answers* to employees questions it is not as broad as MassMutual suggests, thus it is **ORDERED** that this material be provided to the plaintiff.

**Request 21** - This court finds this request is broad and it would be difficult to conceive how MassMutual could comply with it since there might be records of such statements not within its possession. It is therefore **ORDERED** that MassMutual

produce all documents concerning statement from Mr. O'Connell on the subject of age and gender in its possession.

**Request 22-** In oral argument, MassMutual's counsel suggested that she has turned over the only tapes MassMutual possesses with regard to this request, so the motion to compel on this request is moot at this stage.

**Request 26** - <u>All documents maintained by the Board of Directors or the Compensation Committee of the Board of Directors concerning the compensation and promotion of Susan Alfano.</u>

MassMutual's argument that Ms. Alfano can bring her own claim if the company discriminated against her and thus the plaintiff is not entitled to discover her personnel documents is disingenuous. While that is true, it detracts nothing from the relevancy of such information if such information does, in fact, show a pattern of discrimination by MassMutual. MassMutual also argues that Ms. Alfano was not similarly situated to the plaintiff, which is likely a more appropriate argument at the admissibility stage. Assuming MassMutual is correct, there is currently nothing before the court that would lead to the conclusion that Alfano was not "similarly situated" to the plaintiff, thus is it **ORDERED** that this material be produced.

**Request 28** - <u>Severance Agreements with Former MassMutual Employees:</u>

Some federal courts have precluded plaintiffs from discovering the contents of confidential settlement agreements. See, e.g., <u>Butta-Brinkman</u> v. <u>FCA Int'l.</u>, 164 F.R.D.

475, 476-477 (N.D.Ill. 1995); <u>Kalinauskus</u> v. <u>Wong</u>, 151 F.R.D. 363, 367 (D.Nev. 1993). This court does not take the view that severance agreements are or should be treated as settlement agreements. It is **ORDERED** that this material be produced.

       **Request 34** - (see above at Document request 9).

       **Request 36** - <u>All reports summarizing the Employee Opinion Survey at both the corporate level and the business unit level.</u>

       The following questions in the Employee Opinion Survey relate to equal employment opportunities:

       1) "The relations between [MassMutual employees] of different races or ethnic backgrounds are usually good; and

       2) "I feel that management supports equal opportunity for all [MassMutual employees]."

       The Plaintiff has agreed to temporarily limit her request to number 2, which addresses equal opportunity in general, provided that MassMutual provides the plaintiff with a list of all the queries that were asked. The plaintiff has also limited her request to summary information contained in a final report to management.

       It is **ORDERED** that the parties comply with the agreement as stated above.

## II. Interrogatories

MassMutual opposes the plaintiff's motion to compel answers to interrogatories numbers 2, 5, 7, 8, 10, 11, and 14.

**Interrogatories 2 and 5**: Identity of witnesses and other persons known to MassMutual to have discoverable information about the factual allegations and claims set forth in plaintiff's Complaint, together with a statement of the subject and a brief summary of that information (2); Identity of all persons who played any part in the decision to terminate Plaintiff's employment.

It is **ORDERED** that if MassMutual has not already provided the plaintiff with the answers to both interrogatories, it shall do so.

**Interrogatory 7**: Information concerning any complaint of age discrimination or sex discrimination (including sexual harassment), whether verbal or written, made by any employee of MassMutual or any MassMutual General Agent or Agent, from January 1, 1990, through the date of the plaintiff's response.

It is **ORDERED** that MassMutual produce information concerning any complaint of age and sex discrimination where MassMutual is a named party from January 1990 to the date of the plaintiff's complaint. This order does not include complaints of sexual harassment.

**Interrogatories 8, 10, and 11**: Interrogatories seeking information concerning the statistical composition of MassMutual with regard to age and gender.

8

It is **ORDERED** that MassMutual answer Interrogatories 8,10 and 11 in their entirety. The answers shall cover the period from January 1, 1990, to the date of the plaintiff's complaint.

**Interrogatory 14**: <u>Identity of all executive officers who separated from MassMutual from January 1, 1995, through the date of MassMutual's answer, including: (a) the reason(s) for the separation; (b) the total compensation (including benefits) and the various components of that compensation paid or to be paid to the executive officer; (c) whether the separation was due in whole or in part to job elimination or restructuring.</u>

It is **ORDERED** that MassMutual answer Interrogatory 14 in its entirety.

Finally, this court refuses to limit Ms. Dalessio access to the files and documents related to this case. The proposal requested by MassMutual is inconvenient and impractical and --- given the distance between her home and counsel's office --- would interfere with plaintiff's ability to prepare her case. Robert Kocher shall also have access to these documents. While this court acknowledges that Mr. Kocher is an ex-employee of the defendant, is not a party to the action and is not married to Ms. Dalessio, it cannot ignore the simple fact that Mr. Kocher has had a long-term live-in relationship with the plaintiff. Additionally, it is clear that Mr. Kocher has a proactive role in this litigation. Plaintiff's counsel shall submit an affidavit detailing the location in western Massachusetts where he intends to meet with trial and deposition witnesses.

Said witnesses will be permitted to review those files marked "Confidential" and/or "Protected Matter" at that location only.

Paragraphs numbered 9 and 10 shall be deleted from this Protective Order, since it is tantamount to an impoundment of the file. To date, MassMutual has failed to advance a legitimate reason as to why this file should be treated as such. The proposed Protective Order (Plaintiff's Exhibit G) shall be revised to reflect the terms of this order. Prior to receiving access to these files Ms. Dalessio and Mr. Kocher are to execute a Commitment to Comply With and be Bound by Protective Order. Failure to abide by this order shall result in an immediate termination of access to any and all files, documents, video or audiotapes related to this case and the imposition of sanctions.

## ORDER

It is **ORDERED** that the defendant produce Documents in Request #'s 2, 9, 34, 12 as amended, 16, 20, 21 as amended, 26, 28 and 36 as agreed. It is also **ORDERED** that Mass Mutual answer Interrogatories # 2, 7 as amended, 8, 10, 11 and 14. Ms. Dalessio and Mr. Kocher and trial and deposition witnesses shall have access to the files related to this case as contained in this order. The parties shall confer and submit a Protective Order in compliance with the above by September 6, 2000.


Tina S. Page
Associate Justice of the Superior Court


DATED: August      2000

11