UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VERNE DAVIDSON,<br>            Plaintiff,<br><br>vs.<br><br>SPRINGFIELD FOOD SERVICE<br>CORP. and PERFORMANCE FOOD<br>GROUP,<br>            Defendants. | CIVIL ACTION NO. 05-30094-MAP |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

**I.    BACKGROUND**

This case arises out of Plaintiff Verne Davidson's termination from employment with Springfield Foodservice Corp. ("SFC") on May 2, 2003. The remaining[1] four counts of Plaintiff's Amended Complaint allege a variety of legal theories against Defendants. Specifically, Counts I and II allege handicap discrimination and failure to accommodate in violation of Mass. Gen. Laws ch. 151B. Count V alleges workers compensation retaliation in violation Mass. Gen. Laws ch. 152, § 75B(2). Finally, Count VI alleges a violation of the federal Family and Medical Leave Act. The undisputed facts demonstrate that Defendants are entitled to Summary Judgment as a matter of law on all counts. Fed. R. Civ. P. 56.

Charles Agganis, Vice President of Operations, and Peter Brunault, Manager of Human Resources, terminated Mr. Davidson on May 2, 2003 because they believed

---

[1] Plaintiff's Amended Complaint originally contained in six counts. The parties filed a Stipulation of Dismissal with Prejudice on July 11, 2006 of Counts III and IV, which alleged that Defendants discriminated against Plaintiff based on his race and age.

that he had violated company policy by failing to give any notice of his absences from work on May 1 and 2, 2003 and because he had failed to report back to the company after his medical examination despite being directed to do so. (Facts 29)  Mr. Davidson admits that he failed to give notice of his May 1, 2003 absence, and he also admits that he failed to report back to the company after his medical examination despite being directed to do so.  (Facts 21, 24)  Mr. Davidson alleges, however, that Messrs. Agganis and Brunault were mistaken about his failure to call in on May 2, 2003 and mistaken about what the company policy was.   (Facts 25, 38)

      Messrs. Agganis and Brunault believed that Mr. Davidson did not report his May 2, 2003 absence because Mr. Sosnowich informed them that Mr. Davidson had not left a voicemail for either him or for Mr. Pagan reporting his absence that day.  (Facts 28). Messrs. Agganis and Brunault believed that the company's "No call, No show" policy provided for termination after two consecutive absences – not three - because they implemented that policy change. (Facts 15)   It is the state of mind of the decision-makers, Messrs. Agganis and Brunault, that is the critical issue in this case.  *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) (citations omitted). In pretext cases, such as this, the 'focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible...".  *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 824 (1st Cir.1991) (quoting *Gray v. New Eng. Tel. & Tel. Co.,* 792 F.2d 251, 256 (1st Cir.1986))  Although an "employer's good faith belief is not automatically conclusive," *Zapata-Matos v. Reckitt & Colman, Inc.,* 277 F.3d 40, 46 (1st Cir.2002), "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification;  he must elucidate specific facts which would

enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive" of discrimination, Mesnick, 950 F.2d at 824 (internal quotation mark omitted) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir.1990)).   Mr. Davidson has failed to satisfy his burden to prove that the termination reasons articulated by Messrs. Agganis and Brunault are not only untrue but were a pretext for unlawful discrimination and retailiation. *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 338 (1st Cir. 1997).

In the pretext analysis, courts "do not assume the role of a super personnel department, assessing the merits-or even the rationality-of employers' nondiscriminatory business decisions." *Ruiz v. Posadas de San Juan Assocs.*, 124 F.3d 243, 250 (1st Cir.1997) (Title VII) (internal quotation marks omitted); see *Tardanico v. Aetna Life & Cas. Co.*, 41 Mass.App.Ct. 443, 448-50 (1996). Thus, Mr. Davidson cannot meet his burden of proof by simply showing that his termination was unfair or unsound. *Beasley v. ARAMARK Uniform and Career Apparel, Inc.*, 430 F.Supp.2d 8, 12 (D.Mass. 2006). In its totality, Mr. Davidson's evidence amounts to nothing more than speculation that Messrs. Agganis and Brunault must have had some ill motive for terminating him. Speculation of that sort will not defeat summary judgment here. See, *Wallace v. O.C. Tanner Recognition Co.*, 299 F.3d 96, 101 (1st Cir.2002).  Summary judgment is appropriate here because Mr. Davidson's evidence regarding pretext is weak.  *Douglas v.J.C. Penney Co.*, Inc., 422 F.Supp.2d 260, 272 (D.Mass. 2006).

Therefore, even if Mr. Davidson raises a dispute of fact over whether Messrs. Agganis and Brunault were mistaken about his failure to call in on May 2, 2003 and

mistaken about what the company policy was, Mr. Davidson cannot withstand summary judgment on his handicap discrimination claim (Count I), workers compensation retaliation (Count V), and the FMLA discrimination and retaliation claims (Count VI) because he cannot demonstrate that Messrs. Agganis and Brunault harbored the requisite unlawful motive or bias when they made the decision to terminate him.

Moreover, Mr. Davidson's reasonable accommodation claim (Count V) cannot survive summary judgment because SFC did not deny Mr. Davidson any reasonable or requested accommodation. Finally, SFC did not, as a matter of law, interfere with Mr. Davidson's FMLA rights because Mr. Davidson was not entitled to FMLA leave before his termination on May 2, 2003.

## II. LEGAL DISCUSSION

### A. The Discrimination and Retaliation Claims.

#### 1. Mr. Davidson Has No Reasonable Expectation of Proving That Defendants Terminated Him Because Of His April 24, 2003 Work Injury.

Mr. Davidson's handicap discrimination, workers compensation, and FMLA discrimination and retaliation claims stand or fall on his ability to prove that Defendants' stated reasons for terminating him: namely, that he had violated company policy by failing to give any notice of his absences from work on May 1 and 2, 2003 and because he had failed to report back to the company after his medical examination despite being directed to do so, were a pretext to mask discriminatory and retaliatory biases. Because Mr. Davidson has no reasonable expectation of proving that Messrs. Agganis and Brunault were motivated by any unlawful discriminatory or retaliatory bias to terminate Mr. Davidson. His claims must fall.

Mr. Davidson's evidence suggesting that he actually did give notice of his May 2, 2003 absence and that he did not actually violate the company's "No call, No show" policy[2] is not enough to raise an inference of pretext because there is no other evidence of unlawful animus.  It is not enough for Mr. Davidson to merely question the veracity of the Defendants' termination reasons; he must point to specific facts which would enable a jury to find that the Defendants' termination reasons are "not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive" of discrimination., *Mesnick*, 950 F.2d at 824 (internal quotation mark omitted) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990)).   Mr. Davidson cannot meet this burden.

### 2.    The Handicap Discrimination Claim

It is undisputed that Mr. Davidson has no direct evidence of discrimination, i.e., admissible evidence, which, if believed, would allow for a reasonable conclusion that but for his handicap he would not have been terminated.[3]  Thus, to defeat Defendants' Motion, Mr. Davidson must satisfy the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[4]  To do so Mr.

---

[2]  Mr. Davidson understood that the "No call, No show" policy provided for termination for employees who failed to give notice of three consecutive absences. (Facts 38)

[3]  Mr. Davidson has not alleged to have any direct evidence of discrimination.  Indeed, direct evidence is "direct" and consists of a decision-maker's statements that directly reflect the alleged animus and bear squarely on the contested employment decision.  *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000); *Fernandes v. Cost Brothers Masonry, Inc.*, 199 F.3d 572, 581 (1st Cir. 1999).  It is undisputed that Messrs. Agganis and Brunault did not tell Mr. Davidson that he was terminated because of his alleged handicap, or purported exercise of rights under the FMLA or workers compensation statute.  To the contrary, Mr. Davidson admitted that he was told that he was terminated because he did not report for work even though SFC had light duty work available for him.  (Facts 33)

[4]  Massachusetts, too, uses a burden-shifting analysis akin to federal law to determine whether discrimination in violation of Chapter 151B has taken place.  See, *e.g.*, *Abramian v. President &*

Davidson must establish a *prima facie* case of handicap discrimination.  If he does, Defendants must articulate a lawful reason(s) for terminating his employment. However, once Defendants' reasons are articulated, the presumption of discrimination vanishes, and the sole remaining issue is whether Defendants terminated Mr. Davidson because of his handicap.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097 (2000); *Melendez-Arroyo v. Cutler-Hammer de P.R. Col, Inc.*, 273 F.3d 30, 33 (1st Cir. 2001).  Thus, to withstand Defendants' motion for summary judgment, Mr. Davidson must do more than just cast doubt upon Defendants' termination reasons:  he must point to admissible evidence which could raise an inference of discriminatory motive underlying the purportedly pretextual explanation. *Lawrence v. Northrop Corp.*, 980 F.2d 66 (1st Cir. 1992).  As the undisputed facts below demonstrate, Mr. Davidson cannot meet his burdens.

Defendants have articulated two legitimate, non-discriminatory reasons for Mr. Davidson's termination; namely, his perceived failure to give any notice of his absences from work on May 1 and 2, 2003 and because he had failed to report back to the company after his medical examination despite being directed to do so. (Facts 29)

Mr. Davidson has no evidence whatsoever other than his bare contentions and speculation that Defendants' proffered reasons for his termination were not the real reasons, but were a pretext for handicap discrimination.  Indeed, inadmissible evidence, such as Plaintiff's subjective speculation and belief, may not be considered to create a genuine issue for trial and defeat a summary judgment motion.  *Horta v. Sullivan*, 4 F.3d 2, 7-8 (1st Cir. 1993); *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 16-17 (1st Cir. 1986). Summary judgment is appropriate, even in employment discrimination cases, "where

---

*Fellows of Harvard College*, 432 Mass. 107 (2000).

elusive concepts such as motive or intent are at issue . . . if the non-moving party rests merely upon conclusive allegations, improbable inferences, and unsupported speculation." *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 870-71 (1st Cir. 1997). To demonstrate pretext Mr. Davidson must show an impermissible discriminatory animus. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d at 842. But all Mr. Davidson offers as evidence to support his handicap claim is the fact that he was terminated after he was injured at work.

Courts have recognized various types of circumstantial evidence that may show be demonstrative of pretext, none of which exist in this case.[5] To the contrary, all other facts and circumstances indicate that handicap bias played no role in Mr. Davidson's separation from employment. SFC has terminated others for two days of "No call, No show" both before and after Mr. Davison was terminated. (Facts 35-36) Thus, Mr. Davidson cannot demonstrate that he has been disparately treated.

3.  The Workers Compensation Retaliation Claim

Mr. Davidson cannot establish a prima facie case of retaliation under Massachusetts' Workers' Compensation Act (c. 152) because he cannot demonstrate that he exercised rights under c. 152 or that his termination was causally connected to

---

[5] These include, but are by no means limited to, statistical evidence showing disparate treatment by the employer of members of the protected class, *see, e.g., Olivera v. Nestle Puerto Rico, Inc.,* 922 F.2d 43, 49 (1st Cir.1990), comments by decision-makers which denigrate those over forty, *see, e.g., Siegel v. Alpha Wire Corp.,* 894 F.2d 50, 55 (3d Cir.), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990), the incidence of differential treatment in the workplace, *see, e.g., McDonnell Douglas,* 411 U.S. at 804-05, 93 S.Ct. at 1825-26, and the deployment of younger replacements, *see, e.g., Hebert,* 872 F.2d at 1115. Above all, courts will look at evidence of discrimination not in splendid isolation, but as part of an aggregate package of proof offered by the plaintiff. *Olivera,* 922 F.2d at 50.

his exercise of a right under c. 152.6  See *Piderit v. Siegal & Sons Investments, Ltd.*, 55 Mass. App. Ct. 1, 5, 768 N.E.2d 1099 (2002), rev. denied, 437 Mass. 1107, 773 N.E.2d 442 (2002).

In *Piderit*, the Plaintiff was terminated after reporting a work-related injury but before filing a workers compensation claim. Id. at 2. The judge awarded summary judgment to former employer on the basis that the mere reporting of a workplace injury is not an exercise of a right under the workers compensation statute. Id. at 3.  The Appeals Court affirmed the entry of summary judgment on the basis that the Plaintiff's evidence that he was terminated shortly after sustaining a workplace injury was insufficient to demonstrate a connection between his termination and his work-related injury; it declined to decide whether the Plaintiff had exercised a right under the statute. *Id.* at 4.  However, it reviewed decisions from other jurisdictions that an injured employee had exercised a right before the filing of a workers compensation claim.  In those cases the injured employee had either filled a notice of injury form or been paid workers compensation benefits before the claim filing or there was independent evidence of retaliatory bias.  Id. at 3.  None of those factors are present here because Mr. Davidson did not fill out a notice of injury report and he was not paid workers compensation benefits until after his termination. (Facts 42)

All that Mr. Davidson did do about a workers compensation claim, other than to make a belated verbal report of injury, was to go to Occu-Health to be examined, as directed by Ms. Szaban.  (Facts 42)  This singular act by Mr. Davidson does not

---

[6] To prove a violation of c. 152, § 75B(2), a Plaintiff must demonstrate that (1) he engaged in an activity protected by the Workers' Compensation Act; (2) SFC was aware of the protected activity; (3) SFC thereafter engaged in an adverse employment action; and (4) but for his engagement in the protected activity, PFG would not have taken the adverse employment action against Plaintiff. *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 177 (1st Cir. 2003).

constitute an exercise any cognizable right under our workers compensation statute before he was terminated.

As in the Chapter 151B context, to prove retaliatory termination under c. 152, Mr. Davidson must show that Defendants' stated reasons for terminating him was a pretext for retaliation. *Isles v. WHC Jr.*, 98 F.3d 1333 (Table)(1st Cir.1996). This too requires consideration of the decision-makers' state of mind. *Downs v. Massachusetts Bay Transp. Authority,* 13 F.Supp.2d 130, 142 (D.Mass. 1998). As stated above, Mr. Davidson must present evidence that Messrs. Agganis and Brunault did not believe the reasons that they stated for terminating Mr. Davidson, and, in fact, were motivated by Mr. Davidson's putative workers' compensation claim to terminate him. *Mesnick*, 950 F.2d at 816. Mr. Davidson only offers as evidence his unsupported belief that Defendants "frowned" on workers compensation claims[7], (Facts 43), is wholly insufficient to establish a triable issue of retaliatory bias. Even if true, it would be unreasonable to infer that an employer who frowns on workers compensation claims retaliates against employees who make workers compensation claims. There are ample lawful and legitimate reasons, e.g. the health, safety and morale of its employees, lost productivity, higher workers compensation insurance premiums, for employers to wish to avoid – or "frown" on - workers compensation claims.

Moreover, Mr. Davidson has no independent evidence of retaliatory bias. For instance, there is no evidence that other employees have been fired for filing workers compensation claims. *Cf., Ourfalian v. Aro Mfg. Co.,* 31 Mass.App.Ct. 294, 296-297, 577 N.E.2d 6 (1991) (although plaintiff had filed no compensation claim by time of

---

[7] At his deposition Mr. Davidson could cite no examples to support his contention that the Defendants "frowned" on workers compensation claims. Nor could he identify any other employees who were terminated for getting hurt at work. (Facts 43)

9

discharge, the complaint alleged that the employer had fired several other employees for filing such claims). The undisputed evidence here is that Mr. Davidson suffered at least two work-related injuries before the April 24, 2003 injury and that he returned to work and suffered no adverse action. (Facts 7-8) The undisputed evidence also shows that when Mr. Davidson's former warehouse co-worker, James Hagberg, got hurt at work he suffered no adverse consequences and his physical restrictions were accommodated by Mr. Pagan until he was ready to return to full duty. (Facts 46) In addition, the undisputed evidence reveals that SFC has promoted employees who previously had workers compensation injuries. (Facts 44) In contrast, all the evidence that Mr. Davidson has is that he was fired after he was hurt at work. As in Piderit, this is insufficient to withstand summary judgment. [8]

### 4.    The FMLA Discrimination and Retaliation Claims

The undisputed facts demonstrate that Defendants did not take adverse action against Mr. Davidson for exercising his alleged right to FMLA leave.[9] The First Circuit's approach to an FMLA retaliation claim is to permit proof directly, or by inference, with the ultimate burden of proof remaining on the plaintiff to prove by a preponderance of the evidence that the employers' adverse employment action was in retaliation for exercise of protected rights. *Colburn v. Parker Hannifin/Nichols Porland Div.*, 429 F.3d 325 (1st Cir. 2005). However, there is no direct or indirect evidence that Messrs. Agganis and Brunault terminated Mr. Davidson's employment for allegedly seeking

---

[8] See generally, *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662 (1996) (regarding elements of retaliation claim under G.L. c. 151B). "The mere fact that one event followed another is not sufficient to make out a causal link." *MacCormack*, 423 Mass. at 662, n.11, citing *Prader v. Leading Edge Products, Inc.*, 39 Mass.App.Ct. 616, 617 (1996).

[9] For the reasons set forth below in Section C, Defendants contend that Mr. Davidson was never entitled to FMLA before the decision was made to terminate him on May 2, 2003.

FMLA leave.

Plaintiff cannot even establish a prima facie case of FMLA retaliation. To make out a prima facie case of retaliation, a plaintiff must show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Hodgens v. General Dynamics Co., 144* F 3d 151, 161 (1st Cir. 1998). Here there is no dispute as to the existence of facts supporting the second element; however, the undisputed facts demonstrate no causal connection between the two actions.

There is no logical connection between Mr. Davidson's alleged sought FMLA leave and his separation from employment. It is well-established law in this jurisdiction that a Plaintiff cannot avoid summary judgment by speculation. Lehman v. Prudential, 74 F. 3d 323, 327-28 (1st Cir. 1996) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation".)

Because Plaintiff cannot offer any genuine issue of material fact to support a finding that he was terminated because of his alleged handicap, summary judgment for Defendants on Count I, IV, and so much of Count VI as alleges FMLA discrimination and retaliation, is warranted.

    B.    <u>Defendants Accommodated Plaintiff's Alleged Handicap Even Though They Had No Duty To.</u>

Mr. Davidson has provided the best argument for the dismissal of this claim himself. Mr. Davidson testified under oath at his deposition that Defendants never

denied him the accommodations he sought: light duty and a return to work. (Facts 41) While no further argument is necessary, Defendants will briefly proceed, lest this honorable Court disagree.

Mr. Davidson never personally requested an accommodation following his April 24, 2003 injury. Defendants are not legally obligated to provide Mr. Davidson with an accommodation that he never requested. See, *Conway v. Boston Edison Co.*, 745 F.Supp. 773, (D.Mass.1990)(151B claim)(employer did not fail to accommodate plaintiff by waiving typing test where plaintiff never requested employer to do so). But, assuming *arguendo*, that Occu-Health's fax to SFC of the Patient Status form containing a light duty restriction for Mr. Davidson was a request for an accommodation, the undisputed evidence reveals that Defendants were ready to make that accommodation had Mr. Davidson returned to work. (Facts 23, 33) SFC had a history of providing light duty to injured employees (Facts 23), and Mr. Davidson knew that because he had been on light duty before. (Facts 8) There was no reason for him to believe that he would be denied light duty. Indeed, Mr. Davidson admits he was not denied light duty.

In addition, there is no evidence that Defendants did not intend to allow Mr. Davidson to return to work. In fact, the undisputed evidence reveals that had Mr. Davidson returned to work on May 1 or 2, 2003, he would have been allowed to work and his stated restrictions would have been accommodated. Because Plaintiff cannot offer any genuine issue of material fact to support a finding that Defendants breached a duty to accommodate his alleged handicap, summary judgment for Defendants on Count II is appropriate.

      C.    <u>Mr. Davidson Has No Reasonable Expectation of Proving That Defendants Interfered With His Exercise Of Rights Under The FMLA</u>.

Mr. Davidson was not entitled to FMLA leave before he was terminated. Consequently, no reasonable jury could conclude that Defendants violated the FMLA when it did not designate Mr. Davidson's absence as FMLA leave because to prevail on an FMLA interference claim, a plaintiff must establish five things. First, the worker must establish that he fit the definition of an "eligible employee." Second, the worker must establish that he worked for an employer covered by the Act. Third, the worker has to show that he qualified for FMLA benefits for one of four statutory reasons. Fourth, the worker has to prove that he gave his employer appropriate notice. Finally, the worker has to establish that the employer denied him benefits to which the FMLA entitled him. Wheeler v. Pioneer Developmental Services, Inc., 349 F.Supp.2d 158, 164 (D.Mass. 2004)(internal citations omitted). Mr. Davidson cannot prevail on his FMLA interference claim because he cannot establish the fourth and fifth prongs.

Mr. Davidson cannot establish that he gave SFC appropriate notice of his need FMLA. The FMLA grants eligible employees the right to take leave because of a "serious health condition" that renders them unable to perform the functions of their position. 29 U.S.C. § 2612(a)(1)(D). The statute defines "serious health condition" as including "an illness ⋯ that involves ⋯ continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). Regulations promulgated by the Secretary of Labor in turn provide a definition of "continuing treatment by a health care provider" that includes, in relevant part:

> A period of incapacity (i.e., inability to work ⋯) of more than three consecutive calendar days, and any subsequent treatment or period of

> incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider ⋯; or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i)(emphasis added).

SFC had no information upon which to reasonably conclude that Mr. Davidson was entitled to or needed FMLA leave. It is undisputed that Mr. Davidson never requested FMLA leave himself. (Facts 39) Yet it was Mr. Davidson who was responsible for alerting SFC of his need for FMLA leave. *See*, *De Hoyos v. Bristol Laboratories Corp.*, 218 F.Supp.2d 222, 225 (D.Puerto Rico 2002). Mr. Davidson also never told anyone at SFC how long he would need to be out after he failed to report for work on May 1, 2003. (Facts 39).

In addition, on these undisputed facts, it is unreasonable to suggest that SFC should have known of Mr. Davidson's entitlement to, or need for, FMLA leave. First, Mr. Davidson's Patient Status form (Exhibit 11), the only medical document SFC had relating to his injury, indicated that Mr. Davidson would return to work on Thursday, May 1, 2003 on light duty. SFC was ready and willing for that to happen. As of May 1, 2003 Mr. Davidson had been out three consecutive calendar days (Monday, April 28, 2003 through Wednesday, April 30, 2003). Then Mr. Davidson did not report for work on May 1st, as expected, and he did nothing to notify SFC that he would not be coming to work. Having heard nothing from Mr. Davidson and armed only with the Patient Status form with a May 1st return date, there was no way for SFC to know that Mr. Davidson was not at work on May 1st because of his back injury. As of Thursday, May 1, 2003, SFC could not be reasonably expected to consider Mr. Davidson's back injury a "serious

14

health condition" as SFC had no notice that Mr. Davidson was absent because of it. Thus, the four consecutive day absence requirement of 29 C.F.R. § 825.114(a)(2)(i) was unsatisfied. And therefore, Mr. Davidson cannot establish the fifth prong: that he had a "serious health condition" entitling him to FMLA leave.

In effect, Mr. Davidson's position is someone at SFC should have guessed that he needed FMLA leave for his back injury. Yet, SFC had no concrete or specific information to reasonably reach that conclusion. See, *Szabo v. Trustees of Boston University*, Not Reported in F.Supp., 1998 WL 151272 (D.Mass.1998) (O'Toole, J.) Summary judgment is appropriate on the issue of whether or not an employee's notice is adequate. *See*, *De Hoyos v. Bristol Laboratories Corp.*, 218 F.Supp.2d 222, 226 (D.Puerto Rico 2002)(citations omitted). The FMLA did not require that SFC guess that Mr. Davidson needed FMLA leave.

Moreover, Defendants "No call, no show" policy did not violate FMLA. Nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring to employees to keep their employer informed about the employee's plans. Mr. Davidson's termination therefore did not violate the FMLA. *Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 972 (7th Cir. 2000)(Employer who terminates employee for failing to comply with no call, no show rule did not violate FMLA).[10] Finally, Mr. Davidson's claim for emotional distress damages should be dismissed because emotional distress damages are not available under the FMLA. Beebe v. Williams College, 430 F.Supp.2d 18, 22 (D.Mass. 2006).

---

[10] FMLA regulations provide that "[a]n employer may ⋯ require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d). Holsum's company rules and Attendance Policy are "usual and customary" requirements. See Gilliam v. United Parcel Serv., Inc., 233 F.3d 969, 971-72 (7th Cir.2000).

Because Mr. Davidson cannot offer any genuine issue of material fact to support a finding that Defendants interfered with his FMLA rights, summary judgment for Defendants on Count VI is appropriate.

## III. CONCLUSION

For the reasons stated, Defendants move this court to dismiss all counts of Plaintiff's Complaint.

Respectfully Submitted,

/s/ Timothy Murphy _____
Timothy Murphy, Esq.
BBO #556429
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts  01144

Dated:   December 1, 2006      Tel.: (413) 737-4753/Fax: (413) 787-1941

### COUNSEL CERTIFICATION

In accordance with Local Rule 7.1(A)(2) of the United States District Court for the District of Massachusetts, I certify that Defendant's counsel conferred with counsel for the Plaintiff on November 30, 2006 by telephone in a good-faith effort to resolve or narrow the issues presented in this Motion and was partially unsuccessful in those efforts.

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Defendants' Memorandum In Support Of Their Motion For Summary Judgment was served upon the attorney of record for each other party via electronic filing on December 1, 2006.

/s/ Timothy Murphy \_
Timothy Murphy, Esq.