UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------x
VERNE DAVIDSON,
        Plaintiff,

        v.                              Docket No. 05-30094-MAP


SPRINGFIELD FOOD SERVICE
CORP. , PERFORMANCE FOOD
GROUP,
            Defendants.
-----------------------------------------------x

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Verne Davidson, brings this action against his former employers, Springfield Food Service Corp. and Performance Food Group (collectively "defendants"), alleging that his employer's failure to grant him medical leave and its subsequent termination of his employment violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Mr. Davidson also alleges that his employer violated his rights under M.G.L. c. 151B when it failed to reasonably accommodate him after a work related injury and terminated his employment.

Among the claims set forth in his complaint, Mr. Davidson maintains that defendants interfered with his rights under the FMLA by: (1) refusing to provisionally allow him FMLA leave when he was out of work for a work-related injury; (2) failing to allow him a reasonable opportunity to provide FMLA-certifying, medical documentation; and (3) terminating his employment on May 2,

2003, for violation of the employer's alleged "two-day no-call no show" policy.

Mr. Davidson alleges that his employer retaliated against him for taking FMLA-

qualifying leave.  He also alleges that: (1) he did not violate the no-call no show

policy and that he was terminated in violation of M.G.L. 151B; and (2) the

employer failed to reasonably accommodate Mr. Davidson's qualified handicap

by not allowing him to  return to work when he was released to do so by his

doctor in violation of M.G.L. c. 151B.

**I.    FACTUAL BACKGROUND**

Mr. Davidson has submitted a Statement of Disputed Facts as to Which

there is a Genuine Issue to be Tried (hereafter "Pl. SOF") pursuant to Local Rule

56.1. The facts set forth in that Statement are incorporated into this

memorandum by reference.

**II.    LEGAL ARGUMENT**

**A.    <u>Summary Judgment Standard</u>**

Under the Federal Rules of Civil Procedure, summary judgment is

appropriate only when all the relevant pleadings and supporting documents,

viewed in a light most favorable to the non-moving party, present no genuine

issue of material fact, and the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c); <u>Barbour v. Dynamics Research Corp</u>., 63 F.3d 32, 36

(1st Cir. 1995). All reasonable inferences which may be drawn from the record

before the court are to be indulged in favor of the nonmoving party. <u>Oliver v.

Digital Equipment Corp</u>., 846 F.2d 103, 105 (1st Cir. 1988).

The movant bears the initial burden of proving that no genuine issues of material fact exist for trial. <u>Sands v. Ridefilm Corp.</u>, 212 F.3d 657, 661 (1st Cir. 2000). <u>See</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 -324 (1986). The First Circuit has defined a "genuine issue of material fact" as that which "might affect the outcome of the suit under the governing law." In deciding a motion for summary judgment, "the court must ask 'whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." <u>Lipsett v. University of Puerto Rico</u>, 864 F.2d 881, 894 (1st Cir. 1988), *quoting,* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248, 252, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986)(internal quotations omitted).  In other words, "[a]n issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Oliver,* 846 F.2d at 105 (citations omitted).

As set forth below, a reasonable jury could find on the facts presently before the court that Mr. Davidson suffered from a qualified handicap within the meaning of M.G.L. c. 151B and that he attempted in good faith to engage in an interactive process with defendants and his request for a reasonable accommodation was met with an outright refusal from defendants.  A reasonable jury could also find that Mr. Davidson had a serious health condition within the meaning of the FMLA and that defendants interfered with Mr. Davidson's rights under the FMLA and retaliated against him on that basis.

### B.    Violation of M.G.L. c. 151B

**1.    *Evidence showing that the reasons given for terminating Mr. Davidson are pretextual provides a sufficient basis for a reasonable fact finder to conclude that Mr. Davidson was terminated due to discriminatory animus based on his work related injury in violation of M.G.L. c. 151B.1***

The defendants move for summary judgment on Mr. Davidson's handicap discrimination claim.  Mr. Davidson provides sufficient evidence that the articulated reasons for his termination were a pretext for discrimination.  The Supreme Judicial Court has determined that under M.G.L. c. 151B, this element of proof may be satisfied by circumstantial evidence, such as the inference of discriminatory animus that may be drawn from proof that one or more of the reasons advanced by the employer is false. Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 117 (2000).  At a minimum, proof of pretext is enough to survive summary judgment and present the claim to a jury.  Id.

Mr. Davidson provides sufficient evidence that the reasons given for his termination are pretext.  The sole reason given by Charles Agganis, a decision maker in the decision to terminate him after a fine record of 14 years of employment, (Pl. SOF ¶¶ 3, 5, 6, 13-16), was that Mr. Davidson failed to adhere to a two-day no-call no-show policy.  (Pl. SOF ¶¶ 91-92.)  Mr. Davidson plainly disputes this charge. (Pl. SOF ¶¶ 44-46.) Mr. Davidson admits that he did not call work on May 1, 2003, because he was in severe pain due to his back injury, overslept his alarm by many hours and was incapacitated due to the strong pain medication prescribed by the doctor.  (Pl. SOF ¶¶ 41-42.)  Mr. Davidson took

---

1  The defendants do not dispute that Mr. Davidson is a qualified handicapped person for purposes of M.G.L. c. 151B as a result of his work place injury, or that he suffered an adverse action, namely termination from employment.

great precautions to ensure that he called work on day 2 of the alleged two-day no-call no show -- May 2, 2003 -- and in fact did call in to work before the beginning of his shift to alert defendants he would not be in to work on that day. (Pl. SOF ¶¶ 44-46.)  Mr. Davidson's supervisor, Rolando Pagan, did not answer his phone when Mr. Davidson called on May 2, 2003 and Mr. Davidson left a message for Mr. Pagan. (Pl. SOF ¶¶ 45-47.) It was acceptable practice for employees to leave a voicemail message to report that they would not be in work that day and Mr. Davidson complied with company policy. (Pl. SOF ¶ 46.)

In this summary judgment stage the facts shall be construed in a light most favorable to the non-movant, Mr. Davidson.  The Court should therefore credit the statements of Mr. Davidson that he called in to work prior to his May 2, 2003 shift.  At bottom, there is a material dispute whether Mr. Davidson called work or not on May 2, 2003, supporting a denial of summary judgment.

In addition, the plaintiff presents evidence that the defendants failed to follow their own policy of three-day no-call no-show that was in place at the time of Mr. Davidson's termination.  An employer's failure to follow its own policy is evidence of pretext.  Colburn v. Parker Hannifin, 429 F.3d 325, 336-37 (1st Cir. 2005).  The record is replete with evidence that the employer here had a three-day no-call no-show policy and not a two-day no-call no-show policy as it contends.  (Pl. SOF ¶¶ 65, 67-69.)  The operative handbook stated as much. (Pl. SOF ¶¶ 64-69.)  Whenever defendants change a policy in a handbook, that new policy is published and publicized.  (Pl. SOF ¶¶ 64, 65, 68, 74.)  No publication was made to reflect a change in the three-day no-call no-show policy prior to Mr.

Davidson's termination. (Pl. SOF ¶¶ 64, 68, 74.) Ms. Szaban, who the Human Resources Generalist at the time of Mr. Davidson's termination and was one of only three Human Resource employees understood that the operative no-call no-show policy when Mr. Davidson was terminated was that an employee was terminated after the third day he was a no-call no-show. (Pl. SOF ¶ 63, 69-70, 72, 73.)

Perhaps most telling are company documents which show that at or around the same time as Mr. Davidson's termination for allegedly not calling in to work for two days in a row, numerous other non-handicapped employees were terminated for not showing up to work and not calling for three days in a row or more. (Pl. SOF ¶ 74.) In particular Carlos Sanchez was terminated **on the same day as Mr. Davidson** for being a no-call no show for three days, consistent with the employer's policy. (Pl. SOF ¶ 74.) It is reasonable to infer that the reason given to Mr. Davidson for the termination of his employment – that he was a two-day no-call no show -- was pretext for discrimination and summary judgment should be denied.[2]

Another way a plaintiff can establish pretext is by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" such that a factfinder could "infer that the employer did not act for the asserted non-discriminatory reasons." Santiago-Ramos, 217 F.2d at 56 (citation omitted). The factual record in this case reveals that there are glaring inconsistencies in the reasons asserted by the Defendant.

---

[2] This was at the same time that the company sought to limit its employees' time out of work of work. Mr. Davidson had had several worker related injuries over the years and defendants were aware of his chronically injured back. (Pl. SOF ¶ 7, 77, 90)

Mr. Agganis chose to terminate Mr. Davidson effective May 2, 2003, for his alleged failure to follow the two-day no call no show policy. (Pl. SOF ¶ 92.) After the fact, and after consulting with the Human Resources Manager, that manger Mr. Brunault added new reasons for Mr. Davidson's termination in his May 5, 2003 letter to Mr. Davidson. Specifically Mr. Brunault added -- that Mr. Davidson was terminated for not reporting to work after seeing the doctor for his work related injury and for untimely reporting of his injury to the employer. (Pl. SOF ¶ 93.)

That Mr. Davidson did not report to work to discuss his injury after his initial post-injury doctor's visit is a sham. When Mr. Davidson called in to Mr. Pagan on April 25, 2003, the company was well aware that Mr. Davidson had a work related back injury. (Pl. SOF ¶ 27.) By the time he went to the doctor Mr. Davidson had already spoken with Ms. Szaban and provided her with information sufficient to process his workers' compensation injury forms. (Pl. SOF ¶¶ 28-32.) It was Ms. Szaban that sent Mr. Davidson to the doctor. (Pl. SOF ¶ 27.) Mr. Davidson testified that his pain worsened over time and by the time he went to the doctor was in excruciating pain. (Pl. SOF ¶ 35.) Dr. Magnus' nurse assured Mr. Davidson that she would fax the medical information to his employer, which she did on that day.[3] (Pl. SOF ¶ 35.) The company had all the information it needed about Mr. Davidson's injury and was fully apprised of his condition by April 29, 2003. (Pl. SOF ¶ 92.)

---

3 Any alleged requirement that Mr. Davidson report to work despite his pain likely violate both the FMLA's requirement that an employer provide an employee with unforeseeable leave as discussed more fully below and the employer's duty to reasonably accommodate the needs of an employee with a work related injury, also discussed below.

The other *post hoc* reason in Mr. Davidson's termination letter, that he failed to timely notify the employer of his injury is plainly pretextual. The only evidence of record demonstrates that Mr. Davidson did not report his injury on April 24, 2003, the day when it occurred, because he did not believe the injury to be that bad and attempted to work through the injury. (Pl. SOF ¶ 20.) Although the pain worsened through the day, Mr. Davidson completed his shift. (Pl. SOF ¶ 21.) Mr. Davidson called in to his second job, took Tylenol, and applied heat hoping the pain would subside. (Pl. SOF ¶¶ 22-24.) The pain worsened through the night and Mr. Davidson had trouble sleeping. (Pl. SOF ¶ 26.) Prior to his shift on Friday April 25, 2003, a day after his injury and as soon as he knew that his injury was severe enough that he could not go to work, Mr. Davidson notified his supervisor that he had sustained an injury. (Pl. SOF ¶ 27.) The following Monday, which was the next day that Mr. Davidson was supposed to report to work, he spoke with Ms. Szaban regarding his condition and provided her with information sufficient for her to file a workers' compensation notification of injury. (Pl. SOF ¶¶ 28-32.)

It was also inappropriate by the company's own standards to terminate Mr. Davidson for the stated alleged violations of company policy. There was a progressive discipline policy at the time which required the employer to give a series of warnings, verbal and then written, prior to termination for alleged violations of policy. (Pl. SOF ¶ 62.)The employer did not adhere to this progressive discipline policy. (Pl. SOF ¶ 62.) The defendants' failure to follow its own policies and terminate Mr. Davidson without progressive discipline for a *post*

*hoc* alleged infraction of company policy demonstrates pretext for discrimination and summary judgment should be denied.

### 2. *The employer utterly failed in its duty to reasonably accommodate Mr. Davidson.*

As with federal law, state law requires an employer to reasonably accommodate a qualified handicapped employee. To determine the appropriate reasonable accommodation it may be necessary for the employer to initiate an informal, interactive process with the employee in need of accommodation. M.G.L. c. 151B, § 4; see Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination, 441 Mass. 632, 642-643 (2004). This process is aimed at identifying limitations resulting from the employee's disability and the potential reasonable accommodations that could overcome the limitations. See 29 C.F.R. § 1630.2(*o*)(3).4

Once an employer knows of an employee's disability and the employee has requested an accommodation, the employer's obligation to participate in the interactive process has been triggered. See, Ocean Spray Cranberries, Inc., 441 Mass. at 644; Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 952 (8th Cir. 1999); Taylor v. Phoenixville School District, 184 F.3d 296, 314 (3rd Cir. 1999). In particular, once the employer knows of the disability and the employee's desire for accommodations, the employer has the burden to request additional information that the employer believes it needs in order to fashion a reasonable response. Taylor, 184 F.3d at 315. Once the duty to engage in an interactive process is triggered, both parties then have a duty to assist in the search for an

---

4 In the absence of state authority to the contrary, federal law may be looked to when interpreting the state civil rights statutes. Commonwealth v. Dowd, 37 Mass. App. Ct. 164 (1994).

appropriate reasonable accommodation and to act in good faith. Id. at 312.

Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1285 (7th

Cir.1996). As explained by the Third Circuit in Taylor v. Phoenixville School

District, 184 F.3d 296, 313 (3d Cir.1999):

> What matters under the ADA are not formalisms about the
> manner of the request, but whether the employee or a
> representative for the employee provides the employer with
> enough information that, under the circumstances, the
> employer can be fairly said to know of both the disability and
> desire for an accommodation.

An employer's refusal to participate in the process may itself constitute evidence

of a violation of the statute. Calero-Cerezo v. Dept. of Justice, 355 F.3d 6, 23-24

(1st Cir.2004), citing Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 515 (1st Cir.

1996) ("There may well be situations in which the employer's failure to engage in

an informal interactive process would constitute a failure to provide a reasonable

accommodation that amounts to a violation of the ADA.").  The same standards

apply when assessing employer liability under M.G.L. c. 151B.  See Russell v.

Cooley Dickinson Hosp., Inc., 437 Mass. 443, 457 (2002); Sch. Comm. of Norton

v. MCAD, 63 Mass. App. Ct. 839, 847 (2005).

    Even a brief review of the record of communications between Mr.

Davidson and his employer regarding his workplace injury discloses that the

blame for the breakdown in the interactive process in this case rests with the

employer.  Mr. Davidson requested a reasonable accommodation – specifically

that he not lose his job of fourteen years for taking medical leave.  (Pl. SOF ¶ 58,

59)5  This was sufficient to trigger a duty on the part of his employer to engage in a dialogue and search for an accommodation.  Instead the employer refused to participate in the process in violation of law.

### 3.    *Accommodations sought by Mr. Davidson were reasonable.*

Mr. Davidson alleges that defendants failed to make a reasonable accommodation of his handicap in the following two respects:

a)     That Defendants apply their own three-day no call no show policy, and not terminate him for taking leave from work; and

b)     The Defendants not fire Mr. Davidson for taking leave for his back injury.

Courts have recognized that granting or extending paid or unpaid leaves of absence may be accommodations which employers are required to extend to disabled employees if it would not place an undue burden on the employer. See, Criado v. IBM Corp., 145 F.3d 437, 443-444 (1st Cir. 1197). Whether the leave request is reasonable turns on the facts of the case. Id.

Certainly Mr. Davidson's request that be allowed leave and he not lose his job was enough to trigger a request for a reasonable accommodation sufficient to survive summary judgment. (Pl. SOF ¶ 58.)  A requested accommodation is considered to be reasonable if it would not place an undue burden on the employer. The factual record clearly establishes that the requested accommodations would not have placed an undue burden on the employer.

---

5 Mr. Davidson does not dispute that the employer may have provided him with light duty work if it allowed had it reasonably accommodated him by allowing him to keep his job.

According to the defendants, they had light duty work for Mr. Davidson when he was able to return to work.  See Defendants' Statement of Material Facts, Docket No. 21, ¶ 23.  According to defendants, not firing Mr. Davidson and giving him light duty work until he resumed full duty would place no burden on the company.

When asked at her deposition about the reasonableness of the defendants' actions, Pamela Burns, the Regional Vice President of Human Resources stated that it is reasonable for the company to call an individual who is out of work with an injury if the employee fails to return to work without notice to the employer on the date anticipated.  (Pl. SOF ¶ 87.)  According to Ms. Burns, it is also a reasonable accommodation for an employee who is out with a work related injury, to allow them to provide additional documentation regarding their need to be out of work. (Pl. SOF ¶ 88.)  Mr. Davidson expressly requested that Mr. Brunault inquire of Dr. Magnus regarding his need to stay out of work.  (Pl. SOF 58-59.) Mr. Brunault refused to do so, and unreasonably refused to allow him to come back to work.  (Pl. SOF 83-84.)6

Perhaps the most telling evidence of the unreasonableness of the defendants' actions is its failure to follow its own policy and the law when denying Mr. Davidson leave for his work related injury.  As discussed above, the record is brimming with evidence that the employer here had a three day no-call no show policy.  The evidence also shows that the policy was not applied to Mr. Davidson but, rather, he was terminated, whereas the three day no-call no show policy was

---

6 Even assuming arguendo that the company had a two-day no call no-show policy, it did not consider relaxing its claimed policy for Mr. Davidson despite his work related injury. (Pl. SOF 85.) This is so despite Mr. Brunault's and Ms. Burns' acknowledgment that it would be a reasonable accommodation to do so.  (Pl. SOF 86, 88.)

freely applied to other employees.  The evidence shows that had the company adhered to its own policy Mr. Davidson would not have lost his job.  The defendants also acted unreasonably by failing to follow the law.  As discussed more fully below, the alleged two-day no-call no-show policy as applied to Mr. Davidson violated the Family and Medical Leave Act.  What proves an employer's unreasonableness better than evidence of its failure to follow laws guaranteeing employee rights?

The evidence in this case construed in a light most favorable to the plaintiff, as it must be for purposes of the pending motion for summary judgment, reflects that the employer responded to Mr. Davidson's request for an accommodation with a total lack of accommodation and a refusal to engage in the process.  A jury could reasonably conclude from the above facts that defendants' refusal to offer Mr. Davidson any sort of accommodation is evidence of the employer's bad faith, and rule in favor of Mr. Davidson's claim that his employer failed to reasonably accommodate him. See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648 n. 12 (1st Cir.2000) (reversing summary judgment for employer and granting judgment for employee where company had "simply rejected the request for the accommodation without further discussion") In short, the admissions of the employers' own Vice President and manager establishes that the accommodations sought by Mr. Davidson were reasonable, and that defendants proceeded to terminate Mr. Davidson's employment in direct contravention of the law.

**C.**    **Violation of Anti-retaliation Provision of M.G.L. c. 152.**

The defendants challenge that Mr. Davidson engaged in protected activity
sufficient to support a claim of workers' compensation retaliation.  In support of
their argument they cite to Piderit v. Siegal & Sons Investment Ltd., 55 Mass.
App. Ct. 1 (2002).  However, in Piderit  the Massachusetts Appeals Court
rejected that trial court's finding that reporting a workplace injury is insufficient as
a matter of law to support a claim of protected activity for purposes of a
retaliation claim under the Workers' Compensation Act.  Piderit, 55 Mass. App.
Ct. at 3.

There is no dispute that prior to his termination, Mr. Davidson reported his
workplace injury to his employer.  On April 25, 2005, Mr. Davidson called his
supervisor to alert him that he suffered a work related injury.  (Pl. SOF 27.) On
the next day that he was required to report to work, Mr. Davidson called his
supervisor again to notify him that he had injured his back while at work with
defendants and that he would not be reporting to work.  (Pl. SOF 27.)  Mr.
Davidson also spoke with Ms. Szaban on that day and reported to her that that
he had injured his back while at work with defendants.  (Pl. SOF 28.)  As was her
normal procedure with work related injuries, Ms. Szaban directed Mr. Davidson
to see Barry Magnus, the doctor that the company used for workers'
compensation injuries called "Occupational Health". (Pl. SOF 29-30.)  During that
phone call, Ms. Szaban took the information necessary from Mr. Davidson to
prepare the forms to submit to the workers' compensation insurer. (Pl. SOF ¶
31.) Ms. Szaban then filled out the paperwork that needed to be submitted to the

company's Workers' Compensation insurance carrier. (Pl. SOF ¶ 33.)  On April 29, 2003, the nurse at Dr. Magnus' office faxed a doctor's note regarding Mr. Davidson's injury to SFC on Mr. Davidson's behalf.  (Pl. SOF ¶ 35.)  The nurse at Occupational Health also faxed all the subsequent documentation of Mr. Davidson's subsequent visits to PFG.  (Pl. SOF ¶ 36.)

A reasonable fact finder could infer that Mr. Davidson effectively asserted his rights under the workers' compensation statute when he spoke with Ms. Szaban on April 29, 2003, five days prior to his termination.   After her phone call with Mr. Davidson on April 29, 2003, and with no further communication with him at all Ms. Szaban had the information to complete necessary paperwork to notify the employer's insurer of Mr. Davidson's workers' compensation injury claim. (Pl. SOF ¶¶ 32, 33, 49)  Ms. Szaban submitted a claim on behalf of Mr. Davidson based on the one and only discussion between Mr. Davidson and Ms. Szaban or anyone from defendants which took place on or around April 28, 2003.  (Pl. SOF ¶ 28-36., 50-51)  The record supports a conclusion that Ms. Szaban understood at the time that Mr. Davidson was making a claim of a workers' compensation covered injury.  (Pl. SOF ¶ 28-36.)

In Piderit the Appeals Court declined to require formalistic adherence to a requirement that an employee himself actually file a notice of injury form or that he be paid workers' compensation benefits as a prerequisite to bringing a retaliation claim as a matter of law.  Defendants were well aware at least as of April 28, 2003, and prior to Mr. Davidson's termination that he was asserting his

rights under the Workers' Compensation Act and summary judgment should be denied on that basis.

Defendants also challenge the causal nexus between Mr. Davidson's termination and retaliation for asserting his rights under the Workers' Compensation Act.  As set forth above at pages 4 to 8, the record demonstrates that the reasons given for Mr. Davidson's termination are a pretext.   In addition, the testimony also shows that when PFG took over defendants' operations it was focused on decreasing the number of days out for its employees due to injury and, generally increased productivity by each worker and to its employees seemingly had less regard for individual health and safety.  (Pl. SOF ¶ 76.)  It also shows that PFG was aware that Mr. Davidson had a bad back which he had previously injured on the job prior to PFG taking over operations. (Pl. SOF ¶ 77.)  As set forth by the defendants in their Memorandum at page 10, a reasonable jury could find that Mr. Davidson was fired because he had suffered three work-related injuries, (Pl. SOF ¶ 78), he was essentially damaged goods and terminated in retaliation for asserting his rights under the workers' compensation statute and summary judgment should be denied.

    **D.**    **FMLA Interference Claim**

    **1.**    ***Overview of the FMLA***

Congress enacted the Family and Medical Leave Act, ("FMLA") '"to help working men and women balance the conflicting demands of work and personal life.  It does so by recognizing that there will be times in a person's life when that person is incapable of performing her duties for medical reasons."'  Hodgens v.

General Dynamics, Inc., 144 F. 3d 151, 159 (1st Cir. 1998), *quoting* Price v. City of Fort Wayne, 117 F.3d 1022, 1024 (7th Cir. 1997). In its findings in support of the Act, Congress stated its belief that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). Congress created two types of FMLA claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees ... who have used FMLA leave.").

With respect to Mr. Davidson's claim that his employer interfered with his rights under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the law. Id. § 2615(a)(1). Among the substantive rights granted by the FMLA to eligible employees is the right to as many as 12 weeks of unpaid leave per year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D). An employee who takes leave protected under the FMLA is further entitled, upon return from leave, to reinstatement to the same position or an alternate position equivalent in pay, benefits and working conditions, without loss of accrued seniority. 29 U.S.C. 2614(a)(1); 29 C.F.R. §825.100(c). As recognized by the

First Circuit in <u>Hodgens v. General Dynamics Corp.</u>, these enumerated rights "are essentially prescriptive, 'set[ting] substantive floors' for conduct by employers, and creating 'entitlements' for employees." 144 F. 3d at 159 *citing,* <u>Diaz v. Fort Wayne Foundry Corp.</u>, 131 F.3d 711, 712-13 (7th Cir. 1997). As to these rights, therefore, the employee need not show that the employer treated other employees less favorably, and an employer may not defend its interference with the FMLA's substantive rights on the ground that it treats all employees equally poorly without discriminating. <u>Diaz</u>, 131 F.3d at 712. In this type of FMLA case, the employer's subjective intent is not relevant. The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA -- for example, a twelve-week leave or reinstatement after taking a medical leave. Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer. <u>Hodgens</u>, 144 F. 3d at 159.

> **2.** **Defendants' termination of Mr. Davidson due to alleged violation of the no call no show policy and the failure to grant him leave interfered with Mr. Davidson's substantive rights protected under the FMLA.**

To prevail on an interference claim under the FMLA, a plaintiff must establish that: (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which she was entitled. <u>See</u>, <u>Cavin v. Honda of America Mfg. Inc.</u>, 346 F. 3d 713, 719 *(*6th Cir. 2003). The

undisputed facts in this case clearly establish that Mr. Davidson satisfies each of these criteria.7

In order to qualify for FMLA leave, an employee must have a "serious health condition."   The statute defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves "(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."   29 U.S.C. §2611(11).

Continuing treatment is defined in regulations promulgated by the Secretary of Labor as:

> (i) A period of incapacity (*i.e.,* inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider ...;  or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. §825.114(a)(2).  The regulations define "treatment" to include "examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. §825.114(b).  Further, "[u]nder (a)(2)(i)(B), a regimen of continuing treatment includes, for example, a course of prescription medication (e.g., a painkiller)…" 29 C.F.R. §825.114(b).

The legion of court decisions that have considered what constitutes a "serious health condition" under the FMLA and focus on whether the condition meets the bright line test outlined in the above-cited regulation, not on a

---

7 While the only dispute according to the defendants is whether Mr. Davidson satisfies the fourth and fifth prong of the analysis, they attempt to challenge whether he had a serious health condition under the Act.

particular diagnosis.  In its comprehensive discussion of this issue, the Court in Miller looked to the Secretary of Labor's definition of "serious health condition," which focused on the effect of an illness on the employee and the extent of necessary treatment rather than on the particular diagnosis. See also, Russell v. North Broward Hospital, 346 F. 3d 1335 (11th Cir. 2003); Hodgens v. General Dynamics, Inc., 144 F. 3d 151.  (Lack of a formal diagnosis at time of FMLA leave did not preclude finding of serious health condition where employee met regulatory test.); Brannon v. OshKosh B'Gosh, 897 F. Supp. 1028, 1036 (M.D. Tenn. 1995). The aim of the DOL regulations was to create a bright line test so that employers, and the courts reviewing employer decisions, were not engaged in medical fact finding regarding what constitutes a serious health condition.

In Brannon v. OshKosh B'Gosh, the Court analyzed the plain language of §825.114(a)(2) to hold that, "if an employee is (1)incapacitated for more than three days, (2)seen by a doctor, and (3)prescribed a course of medication, he has a "serious health condition" worthy of FMLA protection. Id.

Mr. Davidson clearly fits within the FMLA's protection because he has a period of incapacity of more than three days for which he received continuing treatment.  Mr. Davidson offers uncontroverted evidence that he was incapacitated from any work for more than three days, specifically from April 25, 2003 until May 6, 2003.  (Pl. SOF ¶¶ 27, 38, 48, 52.)  There is also no dispute that he also received treatment from Dr. Magnus which resulted in a regimen of continuing treatment. (Pl. SOF ¶¶ 27, 38, 48, 52.)  Dr. Magnus advised Mr. Davidson to stay home from work, engage in physical therapy and take pain

medication and anti inflammatory medication.  (Pl. SOF ¶¶ 27, 38, 48, 52.)  His

incapacity in excess of three consecutive calendar days, accompanied by his

treatment by her doctor, which was accompanied by a course of medication

clearly meets the definition of continuing treatment for a "serious health

condition" within the meaning of the FMLA.

> **3.**        ***Mr. Davidson gave the employer adequate and timely
> notice that he was requesting leave which was potentially
> FMLA-qualifying.***

The FMLA and its implementing regulations set out specific notice

requirements on the part of both the employer and the employee.  Where the

need for leave is foreseeable, employees must give their employers 30 days

notice of the need for leave." 29 U.S.C. §2612(e)(1).  The Act does not specify

the notice requirements for leave such as this which is unforeseeable.  Pursuant

to this broad rulemaking authority, DOL regulations provide that "[w]hen the

approximate timing of the need for leave is not foreseeable, an employee should

give notice to the employer of the need for FMLA leave as soon as practicable."

29 C.F.R. §825.303(a).  For unforeseeable leave, the employee should "give

notice to the employer within no more than one or two working days of learning of

the need for leave, except in extraordinary circumstances...." *Id.* This notice can

be verbal or written.  "An employee should provide at least verbal notice sufficient

to make the employer aware that the employee needs FMLA-qualifying leave,

and the anticipated timing and duration of the leave." 29 C.F.R. §825.302(c).

Moreover, "the employee need not expressly assert rights under the FMLA, or

even mention the FMLA, but may only state that leave is needed." 29 C.F.R. §

825.303(b). "The critical question is whether the information imparted to the employer is sufficient to apprise it of the employee's request to take time off for a serious health condition." Cavin, 346 F. 3d at 723, quoting Brohm v. JH Props., Inc., 149 F. 3d 517, 523 (6th Cir. 1998).

There can be no dispute in this case that the notice provided by Mr. Davidson to his employer was more than sufficient to apprise the employer of his need for unforeseeable leave for a serious health condition. Mr. Davidson was originally excused from work up to May 1, 2003. There is no dispute that until that day he was excused absent from work. Mr. Davidson also testified that he was so incapacitated on May 1, 2003, that he was unable to call in to work. He overslept his alarm and did not awake until late into his shift. (Pl. SOF ¶ 40.) Mr. Davidson was, incapacitated and "discombobulated" when he awoke. (Pl. SOF ¶ 41.) He was also in such severe pain that that afternoon he called the doctor to attempt to get some relief from the pain. (Pl. SOF ¶ 42.) A jury could reasonably infer that Mr. Davidson was so consumed with his pain and on painkillers that he was too incapacitated to call work on May 1, 2003. Mr. Davidson testified that he went to extraordinary lengths to be sure to call work on May 2, 2003, which he did. (Pl. SOF ¶¶ 44-46.)

Once the employee has provided the employer with "notice sufficient to make the employer aware that his absence is due to a potentially FMLA-qualifying reason, "the employer is on inquiry notice and bears the burden of ascertaining further details to determine whether the leave qualifies for FMLA protection." Price v. City of Fort Wayne, 117 F.3d 1022, 1026 (7th Cir, 1997);

<u>Darboe v. Staples</u>, 243 F. Supp. 2d 5 (S.D.N.Y. 2003).  This is because it is ultimately the employer's responsibility to determine whether or not the leave is FMLA-qualifying.  No one from defendants called Mr. Davidson while he was out to inquire about his need for further leave prior to terminating him.  (Pl. SOF ¶¶ 49, 50, 51.)  Nor did the employer contact Mr. Davidson to explore his need for FMLA as is required by law. (Pl. SOF ¶¶ 78-82.)

For example, when the employee first gives notice of the need for leave, an employer must provide that employee with a written statement outlining the details of the employee's rights and obligations for FMLA leave and any consequences of the failure to meet those obligations.  29 C.F.R. §825.208(a); 29 CFR §825.301(b)(1), §825.305(a).  The employer may request medical certification of the need for leave, but "must provide a written request, and the employee ... will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation."  29 CFR §825.303(b); 29 CFR 825.305(a).  The regulations explicitly provide, in the context of the initial request by an employer for medical certification, that "a reasonable opportunity" for the employee to submit the requested certification submitted means a *minimum of 15 calendar days* after the employer's request, and longer if the circumstances dictate.  The relevant DOL regulation states, with respect to unforeseeable leave, that:  "…the employee must provide the requested certification to the employer within the time frame requested by the employer (*which must allow at least 15 calendar days after the employer's request*), unless it is not practicable under the particular

23

circumstances to do so despite the employee's diligent, good faith efforts." 29 CFR §825.305(b)(emphasis added).   If an employer finds a certification incomplete, "the employer shall advise an employee…and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. §825.305(d). There is no dispute that none of these regulatory requirements were adhered to by the defendants who made no contact with Mr. Davidson after their April 28, 2003 phone call with him, (Pl. SOF ¶¶ 49, 50, 51, 78-82), and summary judgment should be denied.

> **4.      The precipitous termination of his employment interfered with Mr. Davidson's right to FMLA leave and his right to reinstatement to his former position or an equivalent position following such leave.**

Under the fifth element that must be established to prevail on an interference claim, the undisputed facts in this case conclusively support a conclusion that the employer denied Mr. Davidson FMLA benefits to which he was entitled. To prove a claim that his employer has interfered with a substantive FMLA right, Mr. Davidson need only demonstrate that he was entitled to but denied the right. Hodgens, 144 F. 3d at 159; O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1353-54 (11th Cir.2000); King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir.1999). He does not have to prove that his employer intended to deny the right; the employer's motives are irrelevant. Id; see also, Barry v. Wing Memorial Hospital, 142 F. Supp. 2d 161, 165 (D.Mass. 2001).

The discussion in the preceding section of this Memorandum establishes that Mr. Davidson was entitled to FMLA leave. There can be no doubt that Mr.

Davidson was denied the leave to which he was entitled.  The employer did not request any medical certification when Mr. Davidson did not show up for work on May 1, 2003, or after Mr. Davidson called on May 2, 2003, to alert his employer of the need for further leave.  Mr. Davidson was instead, immediately terminated in violation of the employer's own no-call no-show policy.  The outright denial of leave was not only wrongful, but the timing of the denial further infringed upon procedural rights protected under the FMLA.  The employer did not afford Mr. Davidson the required fifteen day minimum required under applicable regulations to provide medical certification of his claim of a serious health condition under the FMLA.

With respect to Mr. Davidson's substantive right to return to his position or an equivalent position following a period of FMLA leave, the undisputed facts further establish that the precipitous termination of his employment effectively foreclosed his right to reinstatement. An employer cannot avoid liability under the FMLA by discharging an employee who takes leave in order to seek treatment for a condition that is later held to be covered by the FMLA. Caldwell v. Holland of Texas, 208 F. 3d 671, 677 (8th Cir. 2000).  "The employer who precipitously fires an employee, when the latter claims the benefits of leave under the FMLA, bears the risk that the health condition in question later develops into a serious health condition." Caldwell, 208 F. 3d at 677.

The employer here failed to investigate or seek medical certification in support of Mr. Davidson's claim for leave for May 2, 2003.  (Pl. SOF ¶ 82.)  The evidence shows that Mr. Davidson needed leave until he was able to return to

work on May 6, 2003.  (Pl. SOF ¶¶ 27, 38, 48, 52.)  The termination notice from the employer was generated on May 2, 2003, the same day that Mr. Davidson called work to let them know he was in treatment, starting a course of physical therapy and unable to return to work. (Pl. SOF ¶ 44, 45, 48, 95.)

In order for an employee to be eligible for reinstatement after a period of FMLA leave, he need only establish that he is able to return to work. See Barry, 142 F.Supp. at 165; *citing*, Watkins v. J & S Oil Co., Inc., 164 F.3d 55, 59 (1st Cir. 1998). After he was cleared returned to work without by Dr. Magnus on May 6, 2003, Mr. Davidson was ready, willing and able to return to work.  (Pl. SOF.)  An employer may only deny an otherwise eligible employee the right to reinstatement if it can demonstrate that it would have discharged the employee had he not been on FMLA leave. O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1354 (11th Cir. 2000); *see* 29 U.S.C. § 2614(a)(3) (qualifying the right to reinstatement so that an employee returning from FMLA leave is not entitled to "any right, benefit, or position of employment other than any ... to which the employee would have been entitled had the employee not taken the leave"). In other words, if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable. Strickland v. Water Works & Sewer Board, 239 F. 3d 1199, 1206 (11th Cir. 2001). The undisputed facts in this case demonstrate that Mr. Davidson was able to return to work on May 6, 2003 and the reasons underlying the decision to terminate Mr. Davidson was because he took leave that a reasonable jury could conclude was FMLA qualified.

**E.     The defendants violated of the anti-retaliation provision of the FMLA by firing Mr. Davidson for taking FMLA-qualifying leave.**

Mr. Davidson maintains that at a minimum the leave he took on May 1 and 2, 2003 was FMLA qualifying.  The employer does not dispute that Mr. Davidson has a serious health condition.  As discussed at pages 18 to 21, he easily meets that bright line test.

This is a direct evidence case of FMLA retaliation and not a case to which the burden shifting paradigm applies as defendants suggest at page 11 of their memorandum of law.8   The defendants plainly state in their Corrective Action Form and termination letter to Mr. Davidson that a determinative factor in their decision to terminate him was his failure to come to work on May 1 and May 2, 2003.  (Pl. SOF ¶¶ 92, 93.)   See Hatchett v. Philander Smith College, 251 F.3d 670, 677 (8th Cir., 2001);  see generally Provencher v. CVS Pharmacy, 145 F.3d 5, 9 (1st Cir. 1998).  At bottom, there is sufficient evidence to support that those days for which Mr. Davidson was terminated for not coming to work were FMLA-qualified leave.  A jury could conclude that Mr. Davidson was terminated for taking FMLA-qualified leave in violation of the anti-retaliation provisions of the FMLA.

---

8 Even if the Court were to construe this as a case of circumstantial evidence, there is strong record evidence that the reasons articulated for Mr. Davidson's termination are a pretext for his taking leave for a work related injury that would be FMLA-qualified leave.  See pages 4-8 and 18-21 above.

**III.    CONCLUSION**

Based on the foregoing, the Court should deny summary judgment.


Respectfully Submitted,

PLAINTIFF VERNE DAVIDSON
 By:



____/s/ Suzanne Garrow_____
His attorney
Suzanne Garrow BBO# 636548
Heisler, Feldman, McCormick
      & Garrow, PC
1145 Main Street, Ste. 508
Springfield, MA  01103
sgarrow@comcast.net
Phone (413) 788-7988

Dated:  January 3, 2007


<u>CERTIFICATE OF SERVICE</u>
     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

___/s/ Suzanne Garrow_____
Suzanne Garrow